IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>SAMOA ULISESE LEFITI,<br><br>Defendant. | Case No. 15-cr-00459-DKW-1<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE** |

Approximately 65 months into his 196-month sentence, Defendant Samoa Ulisese Lefiti asks the Court to reduce his sentence to time served because his medical conditions, coupled with the COVID-19 pandemic, present an extraordinary and compelling reason warranting such a reduction. While certain aspects of Lefiti's motion are, indeed, compelling, the Court finds the requested reduction inappropriate because the goals of sentencing have not yet been served, and Lefiti remains a danger to the community. For the reasons set forth below, the motion is DENIED.

**RELEVANT BACKGROUND**

On February 23, 2016, Lefiti pled guilty to methamphetamine distribution-related offenses. Dkt. Nos. 109; *see also* Dkt. No. 239. On April 10, 2018, the Court sentenced Lefiti to 196 months' imprisonment and ten years of supervised release. Dkt. Nos. 238, 239. The Court imposed a significant sentence, but one far

below the guideline range (360 months to life), because of Lefiti's substantial assistance to the Government in securing the convictions of other persons associated with the drug-trafficking scheme. Dkt. No. 239 at 1–2; *see also* Dkt. No.236.

On November 17, 2020, Lefiti filed a motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) ("compassionate release motion"). Dkt. No. 260. Lefiti argues his medical conditions—most notably, heart failure, chronic kidney disease, severe obesity, and type 2 diabetes—in light of the COVID-19 pandemic present an extraordinary and compelling reason warranting his immediate release. *Id.* On December 10, 2020, the Government filed a response opposing any sentence reduction, Dkt. No. 268, to which Lefiti replied on December 16, 2020, Dkt. No. 269. This order follows.

## LEGAL STANDARD

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (alterations in original) (quoting 18 U.S.C. § 3582(b)). Such circumstances must be "expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." *See* 18 U.S.C. § 3582(c)(1)(B); *see also Dillon*, 560 U.S. at 827, 831; *United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003).

Congress carved out one such circumstance in 18 U.S.C. § 3582(c)(1)(A)(i). A court may "modify a term of imprisonment" upon an inmate's motion if:

1. the inmate exhausted "all administrative rights to appeal a failure of the [BOP] to bring a motion" on his behalf or 30 days has lapsed since the relevant warden received a request to do so;

2. the inmate has established that "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable [Sentencing Commission] policy statements";

3. the court considers the sentencing factors set forth in 18 U.S.C. § 3553(a) and finds the inmate is "not a danger to the safety of any other person or the community," as provided under 18 U.S.C. § 3142(g).

*See* 18 U.S.C. § 3582(c)(1)(A)(i); U.S.S.G. § 1B1.13 (policy statement). The inmate bears the burden of establishing the requirements for a sentence reduction by a preponderance. *See, e.g.*, *United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998); *see also Walton v. Arizona*, 497 U.S. 639, 650 (1990) (a defendant's due process rights "are not violated by placing on him the burden of proving mitigating circumstances sufficiently substantial to call for leniency"), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584, 609 (2002).

## DISCUSSION

The parties dispute only the second and third requirements detailed above.[1] As explained below, Lefiti meets his burden of demonstrating an extraordinary and

---

[1] In other words, the Government concedes exhaustion. Dkt. No. 268 at 5 ("The Government does not dispute that the Court has jurisdiction over this case.").

3

compelling reason warranting a sentence reduction. However, the Court finds the goals of sentencing set forth in Section 3553(a) would not be served if a sentence reduction is granted, and Lefiti remains a danger to the community. For these reasons, his motion is DENIED.

I. **Extraordinary and Compelling Reasons**

Section 3582(c)(1)(A)(i) permits a sentence reduction only upon a showing of "extraordinary and compelling reasons" and only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission" (the "Commission"). As this Court has explained, it is bound by the Commission's Commentary in U.S.S.G. § 1B1.13 regarding what constitutes an "extraordinary and compelling" reason warranting a sentence reduction. *See, e.g.*, *United States v. Aruda*, No. 14-CR-00577-DKW, 2020 WL 4043496, *2–*5 (D. Haw. July 17, 2020).[2]

Accordingly, the Court applies the following framework to determine whether COVID-19 presents an extraordinary and compelling reason warranting a reduction in sentence:

---

[2] The Court declines Lefiti's invitation to reconsider its prior holdings on this issue, *see* Dkt. No. 5–10. The Court discussed its holding at length in *Aruda*, 2020 WL 4043496, at *2–5, and nothing Lefiti cites since *Aruda* compels a different result. *See also United States v. Carpenter*, 816 Fed. Appx. 159, 159–60 (9th Cir. 2020) (citing the Commission's policy statement in finding the defendant failed to meet his burden of showing an extraordinary and compelling reason warranting release); *United States v. Arceneaux*, — Fed. App. —, 2020 WL 7230958, *1 (9th Cir. Dec. 8, 2020) (citing the Commission's policy statement in finding the Court had not abused its discretion by considering the danger the defendant posed to the community).

> [A]n inmate must necessarily establish the following three elements by a preponderance of the evidence: (1) the inmate is "suffering from a terminal illness," or a "serious" physical or cognitive condition; (2) that condition puts the inmate at a high risk of becoming seriously ill from COVID-19; and (3) if the inmate were to contract COVID-19, the inmate's ability "to provide self-care within the . . . correctional facility" would be "substantially diminishe[d]" and the inmate would "not [be] expected to recover."

*United States v. Kazanowski*, No. 15-CR-00459-DKW-5, 2020 WL 3578310, at *7 (D. Haw. July 1, 2020) (alterations in original) (quoting U.S.S.G. §1B1.13 n.1(A)). Lefiti satisfies all three elements.

The Court recognizes Lefiti's medical records show he is severely obese (with a body mass index ("BMI") above 40) and suffers from chronic kidney disease, heart failure, hypertension, type 2 diabetes, gout, and hypothyroidism, among several other ailments. Dkt. No. 265 at 2–3. Thus, Lefiti suffers from medical conditions recognized by the CDC as placing him at greater risk of having a severe reaction to COVID-19 should he become infected.[3]

As the Court has often explained, demonstrating a high risk of becoming seriously ill from COVID-19 requires showing not only that a defendant is a member of an at-risk group, but also that there is "a high risk of contracting the

---

[3] *See COVID-19 (Coronavirus Disease): People at Increased Risk for Severe Illness – People with Certain Medical Conditions*, CDC (updated Dec. 1, 2020) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Dec. 18, 2020) (listing those with BMIs of 30 or higher and those suffering from chronic kidney disease, heart failure, and type 2 diabetes as having an increased risk of severe illness if they contract COVID-19; listing those with hypertension as possibly having an increased risk).

virus because of the number of positive COVID-19 cases at the facility where [the defendant] is housed." *See, e.g.*, *United States v. Rodrigues*, No. 16-CR-00529-DKW, 2020 WL 5351029, *5 (D. Haw. Sept. 4, 2020).[4] Lefiti has met his burden in this regard.

There was—at one time—a significant outbreak of COVID-19 at USP Lompoc, where Lefiti is housed.[5] While the BOP appears to have initially slowed the spread, cases of COVID-19 are again on the rise in that facility. As of December 18, 2020, the BOP reports 22 inmates and 3 staff are testing positive.[6] These numbers, by themselves, are not necessarily compelling. However, as Lefiti details, Dkt. No. 269 at 5–6, these numbers demonstrate an upward trend.[7] When Lefiti filed his motion a month ago, BOP was reporting just two inmates and one staff member as infected at the facility. *See* Dkt. No. 260 at 11. That such a sharp increase has occurred over the last month at a facility that once had a significant

---

[4]This Court is not alone in requiring a defendant to produce evidence that the number of COVID-19 cases at his facility creates a high risk of contracting the virus. *See, e.g.*, *United States v. Williams*, 2020 WL 4586860 at *3 (D. Haw. Aug. 10, 2020).
[5]*See* Dave Minsky, *Coronavirus Outbreak Reported at Lompoc Prison Exceeds 60 Cases, Among Nation's Highest*, Lompoc Record (last updated May 21, 2020), https://lompocrecord.com/news/local/crime-and-courts/coronavirus-outbreak-reported-at-lompoc-prison-exceeds-60-cases-among-nations-highest/article_b1966dbc-0017-5b59-8a10-c385aa3072f5.html (last visited Dec. 18, 2020).
[6]*COVID-19 Coronavirus: COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/ (last visited Dec. 18, 2020).
[7]Perhaps not wanting to admit to this fact, the Government's December 10, 2020 brief notably fails to report the current case numbers at USP Lompoc. Dkt. No. 268 at 6 (pointing to the number of cases Lefiti reported on November 17, 2020 instead of reporting the current numbers); *see also* Dkt. No. 269 at 5 (Lefiti alerting the Court to this fact).

outbreak is enough for this Court to find there is a high risk of Lefiti contracting the virus at USP Lompoc.

Finally, Lefiti has demonstrated that should he contract the virus, his ability "to provide self-care within the . . . correctional facility" would be "substantially diminishe[d]" and he would "not [be] expected to recover." *See* U.S.S.G. § 1B1.13 n.1(A). Three facts are compelling here. First, Lefiti suffers from *four* comorbidities that the CDC has recognized put him at higher risk of a severe reaction to COVID-19. Second, there is an upward trend of cases at a facility that failed to adequately stem the spread of the virus in the past. Finally, the upward trend in light of the two COVID-19-related deaths at the facility during the last surge in cases weigh heavily toward finding, at a minimum, that should Lefiti contract the virus, his ability to recover is in doubt.

## II.  Section 3553(a) Factors & Risk of Danger to the Community

Lefiti has demonstrated that certain extraordinary and compelling reasons warrant a reduction in his sentence. But the Court's analysis does not end there. The Court must consider any such reduction in light of the sentencing factors set forth in 18 U.S.C. § 3553(a) and determine Lefiti is "not a danger to the safety of

7

any other person or the community, as provided under [18 U.S.C. §] 3142(g)."[8] *See* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13.

Considering the Section 3553(a) factors, the Court finds Lefiti's 196-month sentence is, as it was at sentencing, "sufficient, but not greater than necessary, . . . (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public." *See* 18 U.S.C. §3553(a)(2). To date, Lefiti has served roughly 65 months or about 33 percent of his sentence. Dkt. No. 260 at 13; Dkt. No. 268 at 8–9. This is simply not enough time to meet the goals of sentencing.[9] Lefiti's sentence was significantly below the guideline range due to his substantial assistance to the Government in convicting others involved in the drug trafficking conspiracy. Dkt. No. 240 at 1–2. But Lefiti was no bit player in that conspiracy. Rather, he was a manager or supervisor who was responsible

---

[8] Lefiti argues that the binding effect of BOP policy statements controls whether the Court may consider dangerousness as part of its sentence reduction analysis. Dkt. No. 269 at 9. The Court does not agree. Regardless of any policy statement, even Lefiti appears to acknowledge that Section 3582(c)(1)(A) requires the Court to consider the Section 3553(a) sentencing factors in determining whether to reduce an inmate's sentence. 18 U.S.C. § 3582(a)(1)(A); *see also* Dkt. No. 260 at 13 (Lefiti addressing the Section 3553(a) factors). Among the Section 3553(a) factors is the need for the sentence "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C). Dangerousness, then, is quite clearly part of the sentence reduction analysis and not something that the Court must ignore, as Lefiti urges.

[9] This is true even if the Court, as Lefiti argues, uses his release date and not his sentence to calculate the denominator. *See* Dkt. No. 260 at 13–14. Using his projected release date of August 2029, he has served roughly 37 percent of his sentence. *See* Dkt. No. 268 at 8.

for the possession and/or distribution of more than 6 kilograms of "ice" (a potent variety of methamphetamine).  Dkt. No. 215 at 12–13.

Moreover, this was not Lefiti's first brush with law enforcement for drug-related crimes.  Indeed, Lefiti has six drug-related convictions going back to 1992.  *Id.* at 14–17.  And these crimes are not isolated; that is, it appears that Lefiti has a pattern of being convicted, released, then engaging in unlawful conduct immediately or shortly thereafter.  *Id.*  In fact, the Court found at sentencing that Lefiti met the criteria in the sentencing guidelines for a career offender.  *Id.* at 17; *see also* Dkt. No. 238 (adopting the findings of the presentence report).  None of those convictions and accordant prison and supervised release terms seem to have deterred Lefiti, who appears, by evidence of his position in the conspiracy here, to have escalated his role in illegal drug distribution. Whether considered under Section 3553(a)(1)(C) or Section 3142(g), the Court finds that Lefiti's criminal history and conduct demonstrate that he remains a danger to the community, and no conditions of release could reasonably assure that the community is safe from his further crimes.  *See* 18 U.S.C. §§ 3142(g), 3553(a)(1)(C).

Lefiti's argument that supervised release is sufficient to protect the public is unavailing.  *See* Dkt. No. 260 at 14 ("[s]upervised release also mitigates the concern that release risks recidivism").  Lefiti cites two cases to support this proposition.  *See id.* (citing *United States v. Galu*, 2020 WL 5521034, at *4 (D.

9

Haw. Sept. 14, 2020); *United States v. Mack*, 2020 WL 6044560, at *6 (M.D. Fla. Oct. 13, 2020)).  But the courts in those cases were convinced that conditions of release could be fashioned to reasonably assure the public was protected from further crimes by the defendants.  *Galu*, 2020 WL 5521034, at *4; *Mack*, 2020 WL 6044560, *6.  This Court is not convinced of the same regarding Lefiti.  Lefiti has a record both of testing positive for using drugs and engaging in drug transactions when on parole or supervised release.  Dkt. No. 215 at 14–17.[10]  In short, Lefiti has not presented evidence to convince the Court that it should expect anything different should it release him now.

The Court has a duty to ensure the goals of sentencing are served and that duty continues when a party seeks to alter the Court's sentence.  *See* 18 U.S.C. §3553(a).  Releasing Lefiti at this time would undermine these goals and result in the Court's abdication of its continuing duty.  This it declines to do.

---

[10]In the last fifteen months, Lefiti has been cited twice for unauthorized possession of drugs/alcohol while in prison.  Dkt. No. 260-1.  That Lefiti continues reaching out for controlled substances while incarcerated is clear evidence that he will attempt to do the same if released.

## **CONCLUSION**

For the reasons set forth herein, Lefiti's motion for compassionate release, Dkt. No. 260, is DENIED.

IT IS SO ORDERED.

DATED: December 21, 2020 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

*United States v. Samoa Ulisese Lefiti*, Criminal No. 15-00459-DKW-1, **ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**